UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SAMUEL CANCEL,

                        Plaintiff,                        14-cv-2034 (PKC)

      -against-                               MEMORANDUM
                                                            AND ORDER

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Samuel Cancel seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security (the "Commissioner") that he is not eligible for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., or Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  He asserts that the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Act was erroneous, not supported by substantial evidence, and contrary to law.

        Cancel and the Commissioner have each moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P.  (Dkt. Nos. 11, 16.)  Because the Court concludes that the ALJ did not discharge his duty fully to develop the medical record before him, both motions are denied and the case is remanded to the Commissioner for further development of the evidence.

PROCEDURAL HISTORY

    Cancel applied to the Social Security Administration ("SSA") for DIB and SSI on March 31, 2009, claiming that he was unable to work because of a disabling condition beginning on April 1, 2007. (R. 198–208.)[1] His claim was denied (R. 117–21), and he requested a hearing before an ALJ. (R. 125–26.) A first hearing was held before ALJ Michael Friedman on August 5, 2010, during which Cancel testified and was represented by a non-attorney advocate. (R. 73–88.) In a decision dated August 26, 2010, the ALJ found that Cancel was not disabled within the meaning of the Act. (R. 94–107.)

    Cancel then requested review of the ALJ's decision by the SSA Appeals Council, and on March 30, 2012, the Appeals Council remanded the claim for further administrative proceedings, directing that the ALJ should further evaluate Cancel's mental impairments and maximum residual functional capacity ("RFC"), and should obtain testimony from a vocational expert. (R. 113–15.) A second hearing before ALJ Friedman was held on August 23, 2012. (R. 45–72.) Cancel, represented by counsel, again testified, as did a vocational expert, Pat Green.

    On September 24, 2012, the ALJ issued a twelve-page decision once again finding that Cancel was not disabled. (R. 30–41.) Cancel again sought review by the Appeals Council (R. 26), but the Appeals Council denied review, in a letter dated January 23, 2014. (R. 1–8.) This made the ALJ's ruling the final decision of the Commissioner on Cancel's application. Cancel then filed this action on March 24, 2014, (Dkt. No. 2), and moved for judgment on the pleadings on October 27, 2014. (Dkt. No. 11.) The Commissioner cross-moved for judgment on the pleadings on January 30, 2015. (Dkt. No. 16.)

---

[1] Citations to "(R. __)" refer to the certified copy of the SSA administrative record filed by the Commissioner as part of her answer. (Dkt. No. 8.)

LEGAL STANDARD

A motion to dismiss under Rule 12(c), Fed. R. Civ. P., may be granted only if the movant establishes his entitlement to judgment on the pleadings as a matter of law.  Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted) (alteration in original).

In reviewing a denial of benefits, if the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . ."); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  A court may not review the Commissioner's decision de novo.  See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).

A court's review thus involves two levels of inquiry.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler, 546 F.3d at 265.  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence.  Tejada, 167 F.3d at 773.

An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).  An ALJ's factual findings supported by substantial evidence are "binding" on a district court, but "where an error of law has been made that might have affected the disposition of the case," the Court cannot simply defer to the ALJ's factual findings.  Id.

It is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  In particular, courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe the witnesses' demeanor while testifying.  Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

Before deciding whether the Commissioner's determination is supported by substantial evidence, the reviewing court must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act."  Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citation and quotation marks omitted).  The ALJ has an affirmative duty to fully and fairly develop an administrative record.  Echeverria, 685 F.2d at 755.  This duty arises, regardless of whether the claimant is represented by counsel, from the fact that "a hearing on disability benefits is a non-adversarial proceeding . . . ."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . .'"  Rosa v. Callahan, 168

F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47).  Accordingly, "the reviewing court must make a 'searching investigation' of the record to ensure that" the ALJ protected the claimant's rights.  Robinson v. Sec'y of Health & Human Servs., 733 F.2d 255, 258 (2d Cir. 1984) (citation omitted).  "A finding of gaps in the record or need for further development of the evidence is cause for remand."  Batista v. Chater, 972 F. Supp. 211, 217 (S.D.N.Y. 1997) (Sotomayor, J.) (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

DISCUSSION

Cancel does not challenge the ALJ's findings with respect to his physical limitations, and confines his arguments to the ALJ's treatment of his mental impairments.  (Pl.'s Mem. 2 n.5.)  He asserts that the ALJ failed properly to weigh the available medical evidence and erred in evaluating Cancel's credibility in determining his mental RFC.  He also claims that remand is warranted based on new evidence that was submitted to the Appeals Council.

The mental health evidence before the ALJ included, first, three identical questionnaires filled out by doctors at the Metropolitan Hospital Center ("MHC"), whom Cancel characterizes as his treating physicians.  The first was completed on March 23, 2010 by Dr. H. David Goodman.  (R. 421–28.)  The second was completed on June 30, 2010 by Dr. Faith Aimua and cosigned by Dr. Scott Schwartz.  (R. 431–38.)  The third was completed on January 23, 2012 by Dr. Michael Carpenter and cosigned by Dr. Gilbert L. Alicea.  (R. 445–53.)  All three state that Cancel was treated monthly, and Goodman questionnaire states that Cancel first began treatment in March 2000.  (R. 421.)

The three questionnaires state that Cancel suffers from some combination of schizoaffective disorder, borderline personality disorder, agoraphobia, and panic disorder.  (R.

421, 431, 445.) Both the Goodman and Aimua/Schwartz questionnaires are particularly pessimistic in their prognoses, asserting that Cancel requires long-term psychiatric treatment (R. 421, 445), and rating Cancel as "markedly limited" (the highest level of limitation on the scale) in a large majority of the twenty mental functional areas listed in the questionnaire. (R. 424–26, 434–36.) The Carpenter/Alicea questionnaire is slightly more positive, rating Cancel as "markedly limited" in only three areas, "moderately limited" in thirteen areas, and mildly or not limited in the remaining four. (R. 449–51.) Nevertheless, all three questionnaires agree that Cancel is "markedly limited" in his ability to interact appropriately with the general public and his ability to respond appropriately to changes in the work setting. They also agree that Cancel is incapable of tolerating even "low stress" in a work environment (R. 427, 437, 452), and that he is likely to be absent from work more than three times per month as a result of his impairments or treatment. (R. 428, 438, 453.) All three questionnaires further assert that Cancel's impairments are likely to produce "good days" and "bad days." (R. 427, 437, 452.)

    Next, the record before the ALJ included a psychiatric evaluation dated May 1, 2009, by Dr. Christina O'Flaherty, an SSA consultative examining psychiatrist. (R. 340–44.) Unlike the treating psychiatrists, Dr. O'Flaherty concluded that Cancel's psychiatric problems "do not impair his ability to function normally on a day-to-day basis." (R. 343.) She noted that his appearance, speech and affect at his evaluation were normal, that his mood was "euthymic," and that his thought processes appeared "coherent and goal directed." (R. 341–42.) His attention and concentration appeared "intact," and that although his memory was "mildly impaired," "this appeared to be related to lack of effort." (R. 342.) She determined that Cancel "can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new

tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others," but conceded that "[h]e would do best in a low-stress environment." (R. 343.) Dr. O'Flaherty's report notes no history of psychiatric hospitalizations or current psychiatric treatment, and none of the current medications listed relate to psychiatric problems. (R. 340.)

The record also contains a mental RFC assessment by a non-examining state medical consultant, Dr. Peter Kudler, dated May 11, 2009. (R. 370–73.) It appears to be mostly or entirely based on Dr. O'Flaherty's report, and similarly concludes that Cancel "[r]etains the capacity for simple work." (R. 372.) It contains a "summary conclusions" section rating Cancel's limitations in twenty listed areas, which are substantively identical to the twenty areas in the treating physicians' questionnaires. (R. 370–71.) Dr. Kudler rates Cancel as "moderately limited" in seven activities and as "not significantly limited" in the remaining thirteen activities—a significantly more positive assessment than that of any of the treating physicians. (Id.)

In his 2012 decision, the ALJ concluded that "[t]he objective evidence does not support any marked functional restrictions caused by the claimant's mental impairments" (R. 38), and that Cancel thus retained the mental RFC to perform "simple jobs requiring only one[-] to two-step instructions and only occasional contact with others." (R. 35.) That conclusion was in large part determined by the ALJ's decision not to "give great weight to the opinions of the claimant's three psychiatrists." (R. 39.) The ALJ stated that those opinions were "unsupported by any treatment notes" and "consist[ed] of checklist forms with little explanation." (Id.) He also found that the Global Assessment of Functioning ("GAF") scores supplied by the three psychiatrists, which were generally in the range denoting "moderate symptoms," were inconsistent with their rating Cancel as "markedly limited" in many or most areas. (Id.) He

noted that the Goodman and Aimua/Schwartz questionnaires' rating Cancel as "markedly limited" in his ability to take public transportation conflicted with Cancel's statement to Dr. O'Flaherty that he had taken the subway to his examination with her.  (Id.)  Finally, he noted that the three psychiatrists' references to manic and psychotic symptoms and episodes of decompensation were not documented in the record, for instance by a record of hospitalization.  (Id.)  Instead, the ALJ gave "significant weight" to Dr. O'Flaherty's opinion, whose conclusions he stated were corroborated by the "lack of hospitalizations or emergency room visits to substantiate serious mental limitations."  (Id.)  He also gave "some weight" to Dr. Kudler's "mild ratings," because they were "based on [Dr. O'Flaherty's] report and therefore supported by a documented mental status examination."  (Id.)

        The ALJ's decision not to credit the three psychiatrists without further developing the record was an error of law requiring remand.  As explained earlier, the ALJ was under an affirmative obligation to develop the record fully and fairly.  Specifically, the applicable regulations require the SSA to "make every reasonable effort" to obtain a "complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [his] application." 20 C.F.R. §§ 404.1512(d), 416.912(d).  They also require the SSA to attempt to resolve inconsistencies or insufficiencies in the medical record, and suggest, as the first two options for doing so, recontacting the claimant's treating physician or requesting additional existing records.  20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c).[2]  Further, the regulations also provide that the opinion of the claimant's treating physician must be given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in

---

[2] The Appeals Council's March 30, 2012 letter remanding the case to the ALJ also noted that, in "[g]iv[ing] further consideration" to Cancel's RFC, the ALJ could "request the treating source to provide additional evidence and/or further clarification of the opinions and medical source statements . . . ." (R. 114.)

- 8 -

the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As a consequence of these rules, "an ALJ cannot reject the treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Burgess, 537 F.3d at 129 (quoting Rosa, 168 F.3d at 79); see also Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) ("If a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." (quoting Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010)) (alteration omitted)); Pereira v. Astrue, 279 F.R.D. 201, 206 (E.D.N.Y. 2010) ("the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record").

The record here indicates that the SSA made no attempt to obtain additional information from MHC or from the three psychiatrists that would substantiate their conclusions or resolve perceived inconsistencies. Although, prior to the 2010 hearing, the SSA did request Cancel's treatment records from MHC, the request form shows that Cancel's psychiatric records were not requested. (R. 319.) Indeed, the MHC materials in the record do not contain psychiatric records. (R. 320–39.) The three psychiatrists' questionnaires all state that Cancel was receiving treatment monthly at MHC, and the Goodman questionnaire states that Cancel has been in treatment since 2000. The lack of any psychiatric treating notes from MHC is thus a conspicuous lacuna in the record. Further, the three psychiatrists all state that Cancel's condition produced "good days" and "bad days," suggesting that data from more than one point in time would have been desirable for an accurate assessment of Cancel's impairments. Dr. O'Flaherty, on whom the ALJ largely relied, was in no position to provide that kind of information, given

that her report was based on a one-time evaluation on what might simply have been a "good day" for Cancel.[3]

It is somewhat troubling that Cancel's counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error.  Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented.  Perez, 77 F.3d at 47; see also Kilkenny v. Astrue, No. 05-CV-6507(KMK)(LMS), 2009 WL 1321692, at *15 (S.D.N.Y. 2009) (holding that counsel's failure to present additional information from the claimant's additional psychiatrist did "not neutralize the ALJ's independent, affirmative duty to perfect a complete medical record in the course of rendering a decision on a claimant's application for disability benefits, even when the Plaintiff has retained counsel").  Courts in this Circuit have regularly remanded cases with insufficiently developed medical records, even when the claimant was represented by counsel before the SSA.  See, e.g., Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (much of the claimant's medical history was missing and the existing medical records "provide[d] no coherent overview of [the claimant's] treatment"); Geronimo v. Colvin, No. 13-cv-08263(ALC), 2015 WL 736150 (S.D.N.Y. Feb. 20, 2015) (the ALJ failed to obtain additional information from a treating physician who could have supplied the foundation for his conclusions); Davis v. Colvin, No. 13-cv-1657(PKC), 2014 WL 3887714 (S.D.N.Y. Aug. 7, 2014) (the ALJ failed to obtain treatment records from a physician who treated the claimant six times); Hooker v. Colvin, No. 13-CV-81-JTC, 2014 WL 1976958 (W.D.N.Y. May 15, 2014) (the ALJ failed to request opinion evidence from treating sources as to the claimant's ability to

---

[3] The Commissioner argues that Dr. O'Flaherty's conclusions are bolstered by the report of Dr. Aurelio Salon (R. 345–49), the SSA's consultative examining physician for internal medicine.  Dr. Salon conducted a "mental status screen" and did not notice any abnormalities.  (R. 348.)  Dr. Salon's examination, however, appears to have taken place on the same day and at the same place as Dr. O'Flaherty's.  (R. 340, 345.)

work); Butler v. Astrue, 926 F. Supp. 2d 466 (N.D.N.Y. 2013) (the ALJ did not sufficiently develop the record, given the scant medical evidence before him); Kilkenny, 2009 WL 1321692 (the ALJ overlooked the existence of an additional treating physician).

CONCLUSION

       Because the ALJ failed to develop the record, this case is remanded to the Commissioner for further development of the evidence and reconsideration in light thereof.  The Court expresses no view on how the matter should be determined on remand.  Cancel's motion and the Commissioner's cross-motion for judgment on pleadings are both DENIED.

       SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 2, 2015